Counsel, Ed Olson, appearing on behalf of the claimant, Ciara Carter.  You stub your toe. You pull a muscle. You wrench your back. You get a toothache. It has an effect. Ciara Carter has a chronic pain syndrome. Long-standing, intractable pain. It is a severe impairment. It meets the Social Security Administration's definition of a severe impairment. It significantly limits Ms. Carter's ability to do basic work activities. Basic work activities such as understanding, carrying out, and remembering simple instructions. Use of judgment. Responding appropriately to supervisors and co-workers. And usual work situations. Dealing with changes in a routine work setting. The administrative law judge in this case made a mistake at the second step of the sequential evaluation in finding that the chronic pain syndrome was not a severe impairment. We have cases that say, though, if it's, if it's, that it must be separate and apart. There I said it. And those are the magic words, as you alerted to. From other impairments. And here was it not a standalone condition because it was the same as the neck and back. Your Honor, if you will turn to page 26 of our opening brief, you will see where we outline it is a separate and distinct impairment. It's not connected to the neck and back. Well, Your Honor, here's the thing. Of course it's related. There's an interplay. Right? And you have the back impairment, you have the pain. And the pain lasts a long time. It has a greater effect. There's also mental impairments involved here. And those mental impairments are exacerbated by this chronic pain syndrome. The judge's mistake at the second step of the sequential evaluation colored the ALJ's findings at each success, well, I shouldn't say each successive step. We'll concede at the third step of the sequential evaluation. There's no listings of impairments argument here. But it certainly did color the administrative law judge's residual functional capacity determination. If it is considered in the RFC, then whether or not it's identified at step two, sort of harmless, right? So what about the RFC? What was missing from that assessment? It's not a harmless error, Your Honor, because if this is a severe impairment, it has a significant effect on the ability to engage in work activities. So I guess my question is if the scope of the limitations, the problems that you're describing, have been reflected in the RFC, then it's as if it was taken into consideration. Is that right? And if they had been reflected in the residual functional capacity finding, Your Honor, I'd be in a world of hurt right now. So what's missing? But it wasn't. The judge's, the administrative law judge's residual functional capacity opinion included, amongst other things, Ms. Carter is limited to occupations that only require up to detailed but uninvolved tasks with few concrete variables, little in the way of change in job process from day to day, and jobs with multi-step tasks, easily resumed after momentary distraction. Okay? That doesn't come within a country mile of listing comprehensively and accurately describing the limitations imposed by Ms. Carter's impairments. And when we get to the residual functional capacity determination, we have to consider the opinion of the treating doctor, Dr. Lombardo. And the administrative law judge's failure at step two colored the evaluation of Dr. Lombardo's residual functional capacity opinion. I am confident that when the Commissioner's representative steps up to this podium, she is going to list for you several items in the medical records that support the administrative law judge's residual functional capacity opinion. But that's not what we're concerned with here, is that residual functional capacity opinion supported by substantial evidence on the record as a whole. And that standard necessarily requires the court to not only consider evidence that supports the administrative law judge's finding, but also consider evidence that reasonably detracts from that finding. And then determine, given the evidence that detracts from the ALJ's finding, is it reasonable? Is the administrative law judge's conclusions, are those conclusions reasonable? The Social Security Administration has regulations that inform the administrative law judge what they are supposed to do, how they are supposed to evaluate medical source statements, residual functional capacity opinions, for treating and examining doctors. And the two most important parts of that evaluation are the consideration of supportability and the consideration of consistency. To go along with the administrative law judge's determination regarding supportability, this court would necessarily have to find that Dr. Lombardo, informing her residual functional capacity opinion, did not consider her course of treatment with Ms. Carter, did not consider her own examinations of Ms. Carter, did not consider Ms. Carter's complaints. That would be like this Court issuing a decision without reading any of the briefs. I mean, come on. Of course you're going to consider the arguments that opposing counsel makes. In this case, at least I hope you are, in this case, the administrative law judge didn't do that. There's a bold statement that it's not supported. The administrative law judge, in evaluating consistency, failed to acknowledge that Dr. Lombardo's opinion is consistent with the evidence of record, it's consistent with Dr. Lombardo's treatment notes, it's consistent with Ms. Carter's complaints to her doctors and her testimony at hearing. On the supportability, I think the ALJ just said that she didn't, the doctor didn't cite to any medical records in support. You're saying that you're supposed to infer the entire body of medical records in her? No, Your Honor, I'm sorry. Of course, maybe I did not make myself clear. I'm not saying that they're supposed to infer that. I'm saying to assume that the doctor did not consider their own treatment notes. There must be something more. The ALJ must point to something else that says the doctor clearly did not rely on those. I mean, the form itself asked the doctor to rely on the doctor's examinations and evaluations of Ms. Carter. As an inconsistent factor, the administrative law judge pointed to a couple of mentions in another doctor's notes that they hoped Ms. Carter's condition would improve. Hope and reality are two distinct propositions. Wasn't it a reasonable expectation? Your Honor, I think there's always going to be a reasonable expectation in a therapeutic and supportive environment that that person's going to improve. The simple fact of the matter in this case is she didn't. Ms. Carter didn't improve. And while there might still be hope that she will, like I said, you know, hope. I mean, a popular sitcom tells us that Marissa Tomei, an Academy Award-winning actress, is attracted to short, bald, quirky men. I hope that's true, but you know what? She hasn't called me yet. So the reality is it's not going to happen. Your Honor, your Honors, had the administrative law judge given the proper amount of weight to the medical source opinion of Dr. Lombardo, the residual functional capacity would have been different. The determination in this decision regarding residual functional capacity is not supported by substantial evidence on the record as a whole. And therefore, this decision denying Ms. Carter's claim for benefits cannot be upheld. And I would like to save a couple of seconds for rebuttal. Thank you. Well, I'm not sure there's enough time left for rebuttal, but we appreciate your argument. Thank you. Thank you very much. Ms. Holland, we'll hear from you. May it please the Court, Laura Holland for the Commissioner of Social Security. This case involves an individual, Ciara Carter, who has physical impairment stemming from her back and neck pain and limitations, and she has mental limitations stemming from her anxiety, depression, and PTSD. And as a result, the ALJ limited her to performing only light work with numerous postural, environmental, and mental limitations. This restrictive finding was well within the ALJ's zone of choice. Carter's arguments essentially ask the Court to reweigh the evidence in a way that's more favorable to her, but because this is not the Court's role on substantial evidence review, I ask the Court to affirm. First, talking about her chronic pain, I'll go to that first. This argument fails for two reasons. The ALJ found that she had severe degeneration in her spine and arthritis and therefore was not required to find the related impairment of chronic pain to be separately severe. The record here was replete with notations indicating that her chronic pain stemmed from her neck and back impairment, as we outlined in our brief with citations to the record at pages 22 to 23. And therefore, the ALJ was reasonable to find that her back and neck impairment was severe but did not need to find that every separate, every other impairment that was related to be a separate and distinct impairment at step two. Were there other effects of the chronic pain that might have justified a separate finding on the chronic pain syndrome? I think there was some reference to some impact on mental ability, cognitive abilities. Certainly, Your Honor. And, you know, the ALJ did that here. He limited her to, I think it was detailed but uninvolved instructions and limited social interactions in the RFC and ultimately at step five found that she could perform only unskilled jobs, which are, you know, the least mentally demanding types of jobs possible. They involve working with things rather than data or people. So, you know, ultimately the ALJ's findings accounted for the pain, whether it be, you know, affecting her physical abilities or her mental abilities. And, you know, going back to the chronic pain argument, you know, the ALJ and the RFC specifically discussed her pain at least five times, as we, you know, discussed at page 24 of our brief. So this isn't a case where the ALJ didn't find pain to be a severe impairment at step two and then completely, you know, didn't address the pain throughout the rest of his decision. Turning to Dr. Lombardo's opinion, so, you know, as opposing counsel discussed, you know, the ALJ was required to address supportability and consistency and determine whether the opinion was persuasive, and the ALJ did that here. I think it's important to look at the opinion itself. This opinion was very extreme. It was a checkbox-style form that indicated that she had extreme limitations in 18 of 20 areas of mental-related functioning, and the ALJ found that this was, you know, this very extreme opinion was both unsupported and inconsistent with the record. Regarding supportability, the ALJ found that she failed to cite medical records to support her opinion, and while the doctor did, you know, include some narrative responses in addition to the checkbox part of the form, you know, if you look, she also, you know, directed the reader to look to her notes. She specifically said, refer to documentation OMG medical records, which is, I believe, OMSID medical group, which is where she practiced. So if you look to those records, and if you look specifically to Dr. Lombardo's underlying, you know, notes, show that, you know, largely normal mental status examination findings, certainly Ms. Carter, you know, presented with some signs of depression and anxiety, and she was noted to have a tearful affect at times, but otherwise she was, you know, her cognition was intact, and all of the other sort of, like, routine responses that doctors give, you know, at every visit were normal. And regarding consistency, with regard to Dr. Ward's notation, Dr. Ward also was a, she was a psychologist who practiced at the same group as Dr. Lombardo, who was a psychologist, excuse me, psychiatrist, so Dr. Ward, you know, her examination findings were also routinely fairly normal, intact, and to the extent that the ALJ noted Dr. Ward's indication that this individual was expected to improve, the ALJ specifically said that was an example. He said as an example, and he, you know, reiterated Dr. Ward's finding or expectation of improvement, but he also gave other reasons for finding the opinion to be inconsistent. Again, Dr. Ward's, you know, and other providers who had seen Carter at other locations, psychiatrists, psychologists, therapists, had also routinely noted normal mental status examination findings. The ALJ also relied on the fact that there were no psychiatric admissions or ER visits for this individual, and I would also note that, you know, this individual was stating that she didn't want to take medications for both her pain and her anxiety because she preferred medical marijuana. You know, that's well within her right, but I believe that that kind of, there is case law that indicates that if an individual is not pursuing all forms of recommended treatment, then that detracts from their. But wasn't she concerned about some addiction problems? Certainly, Your Honor, and, you know, she says she has addiction in her family, but, you know, providers, including Dr. Lombardo, were recommending anti-anxiety, anti-depressant medications, and she was declining those because she preferred medical marijuana to treat her anxiety. And when you were talking about some of the exams, like I can't remember what terms you used, but I think there's just a sort of a mental status exam, sort of how are you doing in the moment, which is, it seemed to me that the petitioner is saying, well, that's a little different than saying overall functioning and mental functioning. Which one are you referring to when you're describing, and I'm sorry, I can't remember the terminology you used, but she was basically fine mentally when she was seen by these doctors? Yeah, I'm talking about the mental status examinations where they, you know, list, you know, mood, cognitive abilities, you know, thought processes, those types of things. And, you know, those are always going to differ from a person when they sit down and tell the provider, oh, these are my complaints, you know, they're both part of every medical note. But I would, you know, point the court back to the fact that the ALJ here did not find this person to be unlimited. He found her to be mentally and physically limited due to her anxiety, depression, chronic pain. So it's not as if the ALJ completely discarded, you know, her allegations. The assessed RFC was actually quite restrictive in this case. And the ultimate finding of unskilled work is also a restrictive finding. Okay. Unless the court has any other questions, I will conclude by noting that this court has recently reaffirmed in the published decision of Bradford v. O'Malley that, quote, we will not disturb the ALJ's determination unless it falls outside of the available zone of choice. And I would ask the court to follow that reasoning here and affirm. Thank you. Very well. Thank you for your argument. I really think, Mr. Olson, being down to nine seconds, we're into de minimis territory here. You want to push it? Okay. I do, Your Honor. I'm going to hold you to nine seconds. I'm going to make one statement. Ms. Carter is right. The Commissioner is wrong. Thank you. Well, thank you for staying within the time. You even had four seconds left. Well, thank you to both counsel. The case is submitted and the court will file a decision in due course.